# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: 03 - 11346-W

ADV. PROCEEDING NO: 03 - 80563

_____

The relief set forth on the following pages, for a total of ____ pages including this page, is hereby **ORDERED.**

**ENTERED**
JUL 0 1 2004
K.E.P.

_____

FILED BY THE COURT ON

July 1, 2004



John E. Waites

_____
John E. Waites
US Bankruptcy Court Judge
District of South Carolina

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| In re:<br><br>Edward N. Rothschild, Jr.,<br><br>               Debtor. | Case No. 03-11346-W<br>Chapter 7 |
| W. Clarkson McDow, Jr., United States Trustee for Region Four,<br><br>               Plaintiff,<br><br>        v.<br><br>Edward N. Rothschild, Jr.,<br><br>               Defendant. | Adv. P. No. 03-80563 |

## ORDER DENYING DISCHARGE

This matter comes before the Court on the complaint filed by the Plaintiff, W. Clarkson

McDow, Jr., United States Trustee, to deny the discharge of Edward N. Rothschild, Jr.[1] ("the Debtor")

pursuant to 11 U.S.C. § 727.[2]   Specifically, the Plaintiff sought denial of Debtor's discharge on the

grounds that he (1) transferred, removed, or concealed property with the intent to defraud creditors [§

727(a)(2)], (2) knowingly and fraudulently made false oaths [§ 727(a)(4)], and (3) failed to explain

satisfactorily his loss of assets or deficiency of assets to meet his liabilities [§ 727(a)(5)].

---

[1]      The Court notes that the debtor testified at his meeting of creditors and at the trial in this matter that his name is Edward Ian Rothschild.  The debtor has never amended his petition to correct this inaccuracy.

[2]      Further references to the Bankruptcy Code shall be by section number only.

After considering the pleadings, the evidence presented, and counsels' arguments, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil procedure 52 made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052.[3]

## FINDINGS OF FACT

1.    Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 12, 2003.

2.    There is no dispute regarding the material facts which gave rise to the complaint to deny discharge.

## THE 2004 CHRYSLER PACIFICA

3.    At the time the Debtor filed his case he held a pre-paid, two-year lease on a 2004 Chrysler Pacifica automobile which he had purchased on May 9, 2003, four months prior to filing, for a price of $19,800. The Debtor failed to disclose his ownership of this pre-paid, two-year lease at any place in his originally-filed Schedules and Statements, including in his Schedule B, Personal Property, or on his Schedule G, Executory Contracts and Unexpired Leases which were filed with the Petition on September 12, 2003.

4.    At his first meeting of creditors, held on October 17, 2003, the Debtor, in testimony under oath, was asked by the representative of the United States Trustee (" the UST") if he owned a 2004 Chrysler. The Debtor stated that he did not. When asked again, the Debtor stated that he did not own a 2004 Chrysler. The Debtor later admitted that he owned the pre-paid, two year lease

---

[3]    The Court notes that to the extent that any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent that any Conclusions of Law constitute Findings of Fact, they are so adopted.

on a 2004 Chrysler Pacifica when he disclosed this lease in his amended Schedules and

Statements filed on November 12, 2003.

## TRANSFER OF CONDOMINIUM IN ROCHESTER, NEW YORK

5.    In May, 2003, four months prior to filing this case, the Debtor sold his condominium in

Rochester, New York and received $38,458.26 as the net proceeds of the sale.

6.    In his Statement of Financial Affairs ("SOFA"), filed on September 12, 2003, the Debtor failed

to disclose this transfer in response to question #10, which required him to disclose all transfers

of property, other than property transferred in the ordinary course of business or financial affairs

of the debtor.

7.    At his meeting of creditors held on October 17, 2003, the chapter 7 trustee in this case, W. Ryan

Hovis, asked the Debtor if he had transferred any property to anyone in the past few years. The

Debtor's answer, under oath, was no. Later in the meeting, under more specific questioning by

the representative of the UST, the Debtor admitted that he had transferred the condominium.

The Debtor also admitted this transfer in his amended SOFA, filed on November 12, 2003.

3

## TRANSFER OF 2001 CHRYSLER PROWLER

8.      In May 2003, four months prior to filing this case, the Debtor sold his 2001 Chrysler Prowler for

$24,000.  The Debtor netted almost $12,000 from the sale of this car.  The Debtor failed to

disclose this transfer in response to question #10 of his original SOFA and to his trustee at the

meeting of creditors.  The Debtor later admitted the transfer in his amended SOFA.


## TRANSFER OF TWO WAVE RUNNERS

9.      In April, 2003, five months prior to filing this case, the Debtor sold two wave runners for a total

of $1,400.  The Debtor failed to disclose these transfers  in response to question #10 of his

original SOFA and to his trustee at the meeting of creditors.  The Debtor later admitted the

transfers in his amended SOFA.


## DISCLOSURE OF DEBTOR'S NAME

10.     On his petition filed on September 12, 2003, the Debtor listed his name as Edward Rothschild.

On his petition, where he was required to disclose all other names used by him in the last 6

years, including married, maiden, and trade names, the Debtor stated "none other."

11.     At his continued meeting of creditors, held on November 14, 2003, the Debtor testified, under

oath, that his full name is Edward Ian Rothschild.  On his amended petition filed on November

12, 2003, the Debtor listed his name as Edward N. Rothschild, Jr.  The amendment also

disclosed that he had been known as Edward Rothschild and Edward N. Rothschild during the

preceding six years. The Debtor testified at his continued meeting of creditors that he is not a

junior and that his middle name is Ian, not initial "N." To this day, the Debtor has never filed an

amendment to his petition or amended petition to correctly state his name and other names used

by him in the six years preceding the filing of his petition.

4

## DISCLOSURE OF DEBTOR'S BUSINESSES

12.    In the Debtor's SOFA filed on September 12, 2003,  in response to question #18,  the Debtor

disclosed that as an individual, he had run six businesses, and that all of them had ceased to

operate in 1998.

13.    In the Debtor's amended Petition and in his amended SOFA, in response to question #18, filed

on November 12, 2003, in addition to the entities listed in the original SOFA, the Debtor

disclosed ten additional businesses which had not been listed on his original SOFA.  The

amended SOFA also disclosed that at least nine of the Debtor's businesses were operational at

some point in 2003.

14.    Prior to September 9, 2003, the Debtor was the registrant of five internet domains which were

not disclosed in his original or amended SOFA.  The Debtor had been required to forfeit his

interests in these internet domains to the federal government in September 2003.

## DISCLOSURE OF LEASED PROPERTY AT 2700 BROAD RIVER ROAD

15.    On his original Schedule G, Executory Contracts and Unexpired Leases, filed by the Debtor on

September 12, 2003, the Debtor disclosed nothing.  However, in testimony at his first meeting of

creditors on October 17, 2003, the Debtor stated that he was the lessee of property at 2700

Broad River Road.  The Debtor subsequently disclosed this lease in his amended Schedule G

filed on November 12, 2003.

## DISCLOSURE OF BOAT TRAILER

16.    At his meeting of creditors held on October 17, 2003, the Debtor was asked by the trustee

whether he had a trailer associated with his boat.  The Debtor responded that he did own a boat

trailer.  However, the Debtor had not disclosed this trailer in his original Schedule B, Personal

Property.  The Debtor subsequently disclosed the trailer in his amended Schedule B filed on

November 12, 2003.

## DISCLOSURE OF INCOME FROM RENTAL OF REAL ESTATE

17.    In his Schedule I, Current Income of Individual Debtor, filed on September 12, 2003, the Debtor

listed his monthly income as $2,400 consisting of his gross wages, salary, and commissions as a

self-employed laborer.  The Debtor listed no other income from any source.  In his SOFA filed

on September 12, 2003, the Debtor stated in response to question #2, with regard to income

other than from employment or operation of business, "none."  At his first meeting of creditors,

held on October 17, 2003, the Debtor disclosed that he received $600 per month rental income

from rental of real estate owned by him.

6

18.   In his amended SOFA, filed on November 12, 2003, the Debtor stated in response to question #2, with regard to income other than from employment or operation of business, that he had received $600 per month for rental of real property.

### DISCLOSURE OF AN AUTOMATED TELLER MACHINE (ATM)

19.   In his Schedule B, Personal Property, filed on September 12, 2003, the Debtor did not disclose his ownership of an ATM. The Debtor eventually disclosed his ownership of an ATM in his amended Schedule B filed on November 12, 2003.

### RETENTION OF RECORDS BY THE DEBTOR

20.   In the Debtor's amended SOFA, filed on November 12, 2003, the Debtor disclosed, in response to question mis-numbered as #58, with regard to suits and administrative proceedings, that Bank of America had obtained a judgment for $211,673.25 arising out of a transaction where the Debtor sold a motor home. The judgment was filed in Richland County, South Carolina, on June 10, 2002. The Plaintiff issued a subpoena to the Debtor which specifically instructed the Debtor to produce "All documents which relate to the sale of the American Eagle motor home previously owned by you and all documents which relate to your disposition of the proceed of the sale." The Debtor produced no documents whatsoever regarding this motor home.

21.   The Plaintiff also subpoenaed the Debtor's federal and state tax returns for the years 2001, 2002 and 2003, and any documents related to the filing of those returns. The Debtor provided only his federal return for 2001. The Debtor has failed to file returns for tax years 2002 and 2003.

### CONCLUSIONS OF LAW

7

The Bankruptcy Code favors the discharge of a debtor's debts, and the bankruptcy laws should generally be construed liberally in favor of granting the discharge. *In re Weldon*, 184 B.R. 710, 712 (Bankr. D.S.C. 1995). However, certain provisions of § 727 prohibit discharge for those debtors who "play fast and loose with their assets or with the reality of their affairs." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) [(quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)]. To obtain an order denying a discharge under § 727, a plaintiff must prove its case by a preponderance of the evidence. *See Farouki*, 14 F.3d at 249; *Anderson v. Walker (In re Walker)*, C/A No. 99-09899-W, Adv. No. 00-80086, at 5 (Bankr. D.S.C. Jan. 5, 2001). Once a plaintiff makes a *prima facie* case, the burden of proof shifts to the debtor to offer credible evidence to satisfactorily explain his or her conduct; however, the ultimate burden remains on the plaintiff objecting to discharge. *See Farouki*, 14 F.3d at 249; *Walker* at 5.

## I.    Section 727(a)(2): Concealment of Property

The Plaintiff first argues that the Debtor's discharge should be denied because the Debtor concealed an interest in property of the Debtor and the estate. A debtor's discharge can be denied if

> (T)he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

§ 727(a)(2).

Essentially, the elements of a § 727(a)(2) action are as follows: (1) the act under scrutiny occurred during the one year period prior to bankruptcy or after the petition was filed; (2) the act was done with actual intent to hinder, delay, or defraud creditors or the trustee; (3) the debtor or his duly authorized agent was the actor; and (4) the act in question consisted of either the transferring, removing, destroying, or concealing a debtor's property. *See Anderson v. Hooper (In re Hooper)*, 274 B.R. 210,

8

215 (Bankr. D.S.C. 2001); *Kaler v. Craig (In re Craig)*, 195 B.R. 443, 449 (Bankr. D.N.D. 1996);

*Adams v. Filter (In re Filter)*, C/A No. 99-04462-W, Adv. No. 99-80370-W, at 8, 2000 WL 33710873

(Bankr. D.S.C. Jun. 15, 2000).

At the time he filed his petition, the Debtor possessed a 2004 Chrysler Pacifica. Only four

months prior to filing his petition, the Debtor had pre-paid $19,800 to the lessor to lease the car for two

years. The Debtor admits that he did not disclose his interest in this car in his schedules - either in his

Schedule B, Personal Property, or in his Schedule G, Executory Contracts and Unexpired Leases. At his

meeting of creditors, the Debtor was asked twice if he owned a 2004 Chrysler. Twice, the Debtor

answered no, he did not own a 2004 Chrysler. The Debtor has defended his answers to these questions

at his meeting of creditors by arguing that since he leased the car, he was answering honestly when he

answered no, that he did not own the car. The Court rejects this argument, the essence of which is - it's

up to the trustee and other parties in interest to ferret out the truth about the Debtor's assets and financial

affairs. "Bankruptcy is not a game of hide and seek that Debtor plays with the Trustee and the Court.

Full disclosure is the *quid pro quo* for a debtor's discharge." *Walker* at 12.

The Debtor had the opportunity to disclose the pre-paid lease of his new vehicle two places in

his schedules. The debtor then had the opportunity to disclose the lease at the meeting of creditors when

questioned by the UST. Rather than accepting his responsibilities to disclose all of his assets and the

details of his financial affairs, the debtor chose to play a game of "catch me if you can." Clearly, the

debtor's actions demonstrate that he intended to defraud his creditors and the trustee by concealing his

interest in the 2004 Chrysler Pacifica. The debtor also failed to disclose his boat trailer, an ATM, and

his lease of property at 2700 Broad River Rd.

The Court concludes that the Plaintiff has proved by a preponderance of the evidence that the

Debtor fraudulently concealed his interest in his leased 2004 Chrysler Pacifica, his boat trailer, his

ATM, and his lease of 2700 Broad River Rd., in violation of § 727(a)(2). Because the Debtor's

9

concealment occurred both prior to and after the filing of the case, the requirements for denial of discharge under § 727(a)(2)(A) and (B) are met. The Court grants judgment to the UST on his first and second causes of action.

## II.   Section 727(a)(4)(A):  False Oath and Account

The Plaintiff also argues that the Debtor's discharge should be denied because the Debtor made false oaths and accounts in connection with his bankruptcy case. The Debtor's discharge can be denied if

> (T)he debtor knowingly and fraudulently, in or in connection with the
> case - made a false oath or account.

§ 727(a)(4)(A).

Specifically, the Plaintiff alleges that in numerous instances, the Debtor failed to answer questions accurately or completely in his Petition, Schedules and SOFA, and at his meeting of creditors.

To deny a debtor's discharge under § 727(a)(4)(A), courts must find, by a preponderance of the evidence, that the debtor made a statement under oath that he or she knew to be false and that the debtor made the statement willfully with the intent to defraud. *See Hooper* 274 B.R.at 218; *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). In addition, the false oath must relate to a material matter.

In its Findings of Fact, the Court noted numerous instances where the Debtor omitted information or failed to provide accurate information in his Petition, Schedules, SOFA, and at his first meeting of creditors. Without repeating the Findings of Fact in their entirety, the Court notes the following inaccuracies in the Debtor's bankruptcy documents: the Debtor failed to disclose transfers of his New York condominium, his 2001 Chrysler Prowler, and his two wave runners, (all transferred within one year of the filing of the case), the Debtor failed to disclose the lease of his 2004 Chrysler

10

Pacifica, the Debtor failed to disclose his boat trailer, ATM, and his lease of property at 2700 Broad River Rd., the Debtor failed to disclose his true name and all names he was known by in the six years preceding the filing of his case, the Debtor failed to disclose all trade names used by him in the six years preceding the filing of his case, the Debtor failed to disclose all of the businesses he had operated in the six years preceding the filing of his case, the Debtor failed to give accurate dates for when his businesses had operated, and the Debtor failed to disclose income from his rental house.  The Court also notes the following inaccuracies in testimony given by the Debtor at his meeting of creditors; the Debtor answered no when asked by the trustee whether he had transferred any property in the last few years. Accordingly, the Debtor provided false testimony under oath at his meeting of creditors, and provided false information in his Petition, Schedules, and SOFA, and his declarations in these documents constitute oaths. *See Hooper* 274 B.R. at 218 ; *See Kaler* 236 B.R. at 894 ("For purposes of [§ 727(a)(4)(A)], a 'false oath' sufficient to merit a denial of discharge includes a misrepresentation or an omission in the debtor's bankruptcy Schedules or Statement of Financial Affairs."); *Huntington Center Partners, Ltd. v. Dupree (In the Matter of Dupree)*, 197 B.R. 928, 937 (Bankr. N.D.Ala. 1996) ("For purposes of Section 727(a)(4)(A), 'false oaths' include false statements or omissions in a debtor's schedules, false statements made by a debtor during the section 341 meeting of creditors, and false statements at the debtor's deposition.").

The next prong in the Court's analysis is whether the Debtor made his false statements willfully with the intent to defraud.  Intent can be shown by direct evidence, or courts can deduce intent by circumstantial evidence or inferences drawn from a course of conduct. *See Williamson,* 828 F.2d at 252. In this case, some four months prior to filing chapter 7, the Debtor went about selling most of his property which had value beyond liens and after exhausting the proceeds of those sales - more than $50,000 - filed his case and failed to disclose the transfers of his property and the pre-paid lease he had purchased with a portion the proceeds from the transfers.  When questioned about his possible

11

ownership of a 2004 Chrysler, the Debtor failed to disclose his pre-paid lease of a new 2004 Chrysler Pacifica. Clearly, the course of conduct of the Debtor and the evidence show that the Debtor made these false statements willfully and with the intent to defraud.

Even if the Court could not conclude in this case that the evidence and the Debtor's course of conduct clearly showed his intent to defraud, the fraudulent intent element is satisfied if a debtor has exhibited a reckless indifference to the truth, and courts have found this reckless indifference where the number of errors in the debtor's oaths produces a cumulative effect that indicates a pattern of cavalier disregard for the truth. *See Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 484 (E.D. Va. 1997). In this case, because of the numerous inaccuracies in the Debtor's Petition, Schedules, SOFA, and in the Debtor's testimony at his meeting of creditors, the Court can easily find that the Debtor displayed a reckless disregard for the truth.

The final element for the Court to consider is whether the false oaths relate to material matters. A statement relates to a material matter when it bears a relationship to the existence and disposition of a debtor's property. *See Williamson*, 828 F.2d at 252. Clearly, the inaccurate disclosures of the Debtor regarding transfers of property, a pre-paid leased vehicle, ownership of assets, income from property rental, a real property lease, businesses the Debtor had operated and the dates those businesses operated, all relate to the existence or disposition of the Debtor's property. Therefore, the Court rules that the Debtor's false statements relate to material matters.

Additionally, the Court responds to three defenses raised by the Debtor. First, the Debtor claims that he lacked mental capacity during the time he was preparing his Petition, Schedules and SOFA. The Debtor offered no corroborating medical or psychological testimony or evidence to support his statements that he lacked mental capacity. On the contrary, the evidence showed that at the time the Debtor alleges he was having mental difficulties while preparing his bankruptcy documents, he was engaging in complicated financial transactions such as selling his New York condominium, his 2001

12

Chrysler Prowler, and his wave runners. He was also entering into a pre-paid, two-year lease on his 2004 Chrysler Pacifica at that time. Additionally, the Debtor has been engaged in a variety of business enterprises and related activities.

Second, the Debtor maintains that he disclosed some of the information missing in his bankruptcy documents to the attorney who originally filed his bankruptcy case but that the attorney failed to include such information in the schedules and statements filed with the Court. The Debtor offered no evidence to support this claim, and in fact, the attorney who filed the Debtor's case testified that he did not omit information provided to him by the Debtor. Additionally, the Debtor admitted taking more than one hour to carefully review the schedules and statements and further admitted he signed and approved them for filing. The Debtor's testimony in this regard simply was not credible. Weighing the testimony of the attorney and the Debtor, the Court is not persuaded by this defense.

Finally, the Debtor relies upon his ultimate amendments to his Petition, Schedules and SOFA as a defense to his inaccuracies and failures to disclose. If the Court adopted this reasoning, it would render much of § 727 meaningless. Under such a holding, debtors would be encouraged to withhold assets or financial information from their bankruptcy documents and their trustees, and then merely amend their documents if and when their non-disclosures are detected.

> The critical time for disclosure is at the time of the filing of a petition and the Debtor has the responsibility to do so. Bankruptcy law requires debtors to be honest and to take seriously the obligation to disclose all matters. The bankruptcy schedules and statements of affairs are carefully designed to elicit certain information necessary to the proper administration and adjudication of the case. To allow the Debtor to use his discretion in determining the relevant information to disclose would create an end-run around this strictly crafted system.

*Weldon* 184 B.R. at 715; *See also Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987) ("The statutes are designed to insure that complete, truthful, and reliable information is put forward at the

outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction.").

The Court concludes that the Plaintiff has proved by a preponderance of the evidence that the Debtor made numerous false oaths and accounts in violation of § 727(a)(4)(A). This Court grants judgment to the Plaintiff on his third cause of action.

**III.    Section 727(a)(5): Failure to Explain Loss or Deficiency of Assets**

The Plaintiff also argues that the Debtor's discharge should be denied because the Debtor has failed to explain the loss of assets. The Debtor's discharge can be denied if

> (T)he debtor has failed to explain satisfactorily, before determination of
> denial of discharge under this paragraph, any loss of assets or deficiency
> of assets to meet the debtor's liabilities.

§ 727(a)(5).

Specifically, the Plaintiff argues that the debtor has failed to produce any documentation which relates to the sale of his American Eagle motor home for $211,673.25 or to the disposition of those funds. The debtor also has failed to filed tax returns for the years 2002 and 2003 which would provide accurate information regarding the Debtor's business affairs during the two years prior to filing. The fact that the Debtor sold his motor home for $211,673.25 is not in dispute. The Debtor has failed to explain the disposition of those funds or his lack of assets. *See In re Martin,* 688 F.2d 883, 886 (7th Cir. 1983) ("Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets.").

The Court concludes that the Plaintiff has proved by a preponderance of the evidence that the Debtor has failed to explain satisfactorily his loss of assets and deficiency of assets to meet his liabilities in violation of § 727(a)(5). The Court grants judgment to the Plaintiff on his fifth cause of action.

14

## CONCLUSION

For all the reasons set forth above, the Debtor is denied a discharge pursuant to 11 U.S.C. §

727(a)(2), (a)(4)(A), and (a)(5).